UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AL ZUBI GONTHER, a/k/a Zobi Monther,

           Petitioner,

        -v-                                   12-CV-875-JTC

JANET NAPOLITANO, Secretary of DHS,
MICHAEL PHILIPS, District Director,
TODD TRYON, Asst. Field Office Director,
and
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

           Respondents.

---

## INTRODUCTION

Petitioner Al Zubi Gonther (a/k/a Zobi Monther), an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered October 3, 2012 (Item 3), respondent[1] has submitted an answer and return (Item 5), along with an accompanying memorandum of law (Item 6), in opposition to the petition, and petitioner has submitted a sworn declaration in reply (Item 7).

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Jordan, entered the United States at an unknown location on an unknown date in 1990 without being inspected, admitted or paroled by an immigration officer. *See* Item 5-2 (Payan Decl., Exh. A), pp. 1, 12; *see also* Item 1, ¶ 10. DHS records reflect that, between January 1995 and May 2009, petitioner was convicted of several criminal offenses while present in the United States, including the following:

- On or about January 26, 1995, petitioner was convicted of Grand Larceny in the 4th Degree;

- On or about January 31, 1996, petitioner was convicted of Intent to Obtain Transportation Without Paying.

- On April 30, 1998, petitioner was convicted of Aggravated Unlicensed Operation of a Motor Vehicle in the 1st Degree and Tampering with Public Records in the 1st Degree.

- On or about June 5, 2003, Petitioner was convicted of Possession of a Forged Instrument in the 3rd Degree.

- On or about July 22, 2003, Petitioner was convicted of Petit Larceny.

- On or about February 23, 2004, Petitioner was convicted of Patronizing a Prostitute in the 4th Degree.

- On or about January 4, 2005, Petitioner was convicted of Illegal Reentry to the United States after deportation subsequent to a felony conviction.

- On or about June 13, 2008, Petitioner was convicted of Insurance Fraud in the 3rd Degree.

- On or about May 12, 2009, Petitioner was convicted of Reentry of Deported Alien and False Statement in Application/Use of Passport.

*See* Item 5-1, ¶ 6; Item 5-2, pp. 7-8.

On June 2, 1998, while in the custody of the New York State Department of Correctional Services ("DOCS") serving a term of incarceration at the Ulster Correctional Facility in Napanoch, New York, petitioner was encountered by immigration officers and an immigration detainer was lodged against him upon verification of his immigration status. *See* Item 5-2 at 7. Deportation proceedings were commenced by a Notice to Appear ("NTA") dated January 6, 1999, which charged petitioner with being subject to removal from the United States pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. *Id.* at 7, 15-16.

On April 14, 1999, an immigration judge ("IJ") found petitioner removable from the United States, and ordered him deported to Columbia, or in the alternative to Jordan. *Id.* at 14. Petitioner waived his right to appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). *Id.* On May 27, 1999, petitioner was removed to Columbia. *Id.* at 7.

DHS records further reflect that petitioner has since re-entered the United States following his removal on several subsequent occasions, as follows:

- On May 30, 2001, following re-entry at an unknown place and time, petitioner was served with a Notice of Intent/Decision to Reinstate Prior Order (Form

> I-871). On August 28, 2001, he was removed to Jordan after Columbia refused to accept him.

- On June 7, 2002, following re-entry, petitioner was served a Form I-871. On August 23, 2002, he was again removed to Jordan.

- On July 24, 2003, following re-entry, petitioner was served a Form I-871. On December 3, 2003, he was again removed to Jordan.

- On May 23, 2006, following re-entry, petitioner was served a Form I-871. On June 16, 2006, he was again removed to Jordan.

- On July 12, 2010, following re-entry and arrest on an unknown charge, petitioner was encountered by immigration officers at Westchester County Jail and was served a Form I-871.

Item 5-1, ¶ 13; Item 5-2, pp. 8-9, 17.

On January 30, 2012, upon his release from custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), petitioner was received into DHS custody. *Id.* at 9, 21. On January 31, 2012, petitioner was served with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that were required to be completed within 30 days to assist in obtaining a travel document for his removal from the United States. The warning form advised, among other things, of criminal penalties under the INA for conniving or conspiring to prevent or hamper his departure from the United States, and also advised that failure to comply, or to provide sufficient evidence of inability to comply, may result in the extension of the removal period and subject him to further detention. Item 5-1, ¶ 15.

DHS records further show that, on February 2, 2012, DHS sent a presentation packet to the Embassy of Jordan (the "Embassy") in Washington, D.C., requesting that a travel document be issued for petitioner's removal. Item 5-2, p. 21. On March 20, 2012, the DHS received the travel documents from the Embassy. *Id.* at 24. Petitioner has refused to be removed, claiming that the travel document must have been forged since it was obtained without his permission. *Id.* at 9; *see also* Item 1, ¶ 14.

On April 27, 2012, petitioner was served with a letter informing him that, upon review of his custody status, DHS had determined to continue detention pending removal because he "pose[d] a danger to the community and … a significant risk of flight." Item 5-2, p. 10. This determination was based on several considerations, including his extensive criminal record; his history of failure to appear for criminal proceedings; his history of poor conduct while in the custody of the DOCCS and DHS; and his refusal to be removed as ordered, all demonstrating "a wanton disregard for the laws of the United States." *Id.* at 9.

On August 2, 2012, a panel was convened at the Buffalo Federal Detention Facility to conduct further review of petitioner's custody status, including an in-person interview. *Id.* at 2, 6. Following completion of the file review and interview, petitioner was notified on August 3, 2012, that DHS had determined to continue his detention in DHS custody. *Id.* at 2-3. On August 8, 2012, petitioner withdrew his request for relief from removal and deferral of removal. *Id.* at 13.

On August 14, 2012, DHS sent a letter to the Embassy requesting that a new travel document be issued for petitioner, supplemented by letter dated September 10, 2012, enclosing new photographs of petitioner. *Id.* at 19-20. Petitioner was interviewed by

telephone by an Embassy representative on September 11 and September 25, 2012. Item 5-1, ¶ 25. Following temporary delay attributable to petitioner's failure to consent to return to Jordan (*see* Item 5-1, ¶¶ 26-27; Item 5-2, pp. 22-23), the Embassy eventually issued a travel document for petitioner on October 31, 2012, valid for one month. Item 5-2, p. 25.

Meanwhile, petitioner filed this action on September 8, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA – respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether

the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here)–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[2]

---

[2]INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to

the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when

released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on January 30, 2012, upon his release from state custody. *See* Item 5-1, ¶ 14. As a criminal alien under a final order of removal based on his presence in the United States without being admitted or paroled, detention was mandatory for the ninety-day removal period pursuant to INA § 241(a)(2). Furthermore, upon determining that petitioner posed a significant threat to the safety and security of the community and a risk of flight, DHS was authorized under INA § 241(a)(6) to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jordan in the reasonably foreseeable future. He simply alleges that the Embassy of Jordan "ha[s] not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued …." Item 1, ¶ 12. However, as discussed above, the Embassy has indeed issued travel documents for petitioner on two separate occasions within the past year, most recently in October 2012, and DHS acted promptly upon petitioner's release from state custody to initiate the removal proceedings. As reflected by the record, any delay in the removal process has been occasioned in large part by petitioner's own conduct in refusing to consent to his return to Jordan, or to sign the travel document application. *See* Item 5-2, pp. 22-23; *see also* Item 5-1, ¶¶ 26-27.

These circumstances provide a reasonable basis for the DHS to expect that an updated travel document will issue, and removal will be accomplished, in the reasonably foreseeable future. Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish petitioner's compliance with the requirements of the DHS regulations described above. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 18-20, 27-34. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet

initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the

Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

    \s\ John T. Curtin
    JOHN T. CURTIN
    United States District Judge

Dated: 4/10/2013
p:\pending\2012\12-875.2241.apr10.2013